IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ANTHONY NELSON,
ADC #98719                                                          PLAINTIFF

v.                              5:06CV00016HDY

TIM MONCRIEF, et al.                                               DEFENDANTS

## MEMORANDUM AND ORDER

I.  Introduction

This matter is before the Court on the defendants' motion for summary judgment (DE #96).

Plaintiff has filed a response in opposition to the motion (DE #118).[1]

Plaintiff, a state inmate incarcerated at the Varner Super Max Unit of the Arkansas Department

of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983 against defendants,[2] alleging

deliberate indifference to his serious medical needs.  Specifically, plaintiff alleges from March, 2005-

August, 2005, he was denied ear medications and a special low-cholesterol diet, prescribed to him in

March, 2005.  Plaintiff asks for monetary and injunctive relief.

According to plaintiff's complaint, mostly undisputed facts set forth by the parties, and the

plaintiff's medical records,  plaintiff was seen by defendant Hubbard on March 16, 2005, for treatment

of right ear pain. Defendant Hubbard noted minimal clear drainage in the external canal and ordered ear

---

[1]

Also pending is plaintiff's first motion to dismiss without prejudice (DE #114).  However,
according to the plaintiff's affidavit, filed in conjunction with his response to the summary
judgment motion (DE #120), he no longer wishes to dismiss his allegations against defendants.
Therefore, the Court will deny the motion as moot.

[2]

Defendants Harris, Hutchinson, Sinclair, Gonder and Norman were dismissed from this lawsuit on
April 27, 2006, and defendant Moncrief was terminated on May 25, 2007.

drops for plaintiff to dry up the drainage.  Defendant also ordered a low cholesterol diet script and instructed that a copy be provided to the plaintiff.

Plaintiff next saw defendant Hubbard on April 23, 2005 for a review of x-rays and pursuant to plaintiff's request to have his blood pressure checked..  Plaintiff became upset during the meeting, stating he was not receiving medications, and left the appointment prior to an examination by defendant Hubbard.  Plaintiff again visited defendant Hubbard on May 5, 2005, following a submission of a sick call request for results of an EKG, and a request for a PSA test and rectal exam.  However, plaintiff refused to permit defendant to examine him, became angry stating he was not receiving his ear drops, and left before being examined.  Defendant Hubbard wrote instructions for the nursing staff to make sure plaintiff received the appropriate low-cholesterol diet.  Finally, defendant Hubbard saw plaintiff on May 12, 2005 in the chronic care clinic for hypertension.  Plaintiff became hostile and threatening and refused to allow defendant to examine him.  Defendant Hubbard re-ordered plaintiff's medications and diet and scheduled him with another medical care provider.

Plaintiff was examined on May 16, 2005 by defendant Shah for a complaint about rectal bleeding.  No notation is made in the medical records concerning a complaint by plaintiff about his medications and diet, but defendant Shah did order Murine and alcohol for plaintiff's ears.

On June 20, 2005, plaintiff was treated for a sore throat and earache by a non-party physician, who prescribed oral antibiotics and ear drops.  Plaintiff received the medications on July 6, 2005, after defendant Stratton discovered a mistake by the nursing staff in taking the medication order off of plaintiff's chart.

Plaintiff was also seen by another non-party physician, Dr. Anderson, around the middle of July and the notes from that visit indicate plaintiff's right ear was tender and antibiotics were continued.

Plaintiff was examined by Dr. Ifedoria on July 23, 2005 for complaints about his eye matting together. He was prescribed an antibiotic and eye drops, which he received on August 2, 2005.   The eye drops were also directed for plaintiff's use in his ears by defendant Burch.   Plaintiff was seen again by Dr. Anderson on July 29, 2005, and August 12, 2005, at which times it was noted that swelling continued in plaintiff's right ear.

<u>II.  Defendants' Summary Judgment Motion</u>

<u>A.  Defendants' Motion</u>

In their motion for summary judgment, defendants state that plaintiff can not support his claim for deliberate indifference against them, and they provide affidavits concerning their involvements with plaintiff.

1) Defendant Hubbard, an advanced nurse practitioner at the Unit - Defendant states she saw plaintiff and prescribed medications on several occasions, but is not involved in the distribution of those medications or in the preparation of his meals.  See DE #98.  Hubbard states on the occasions when plaintiff complained about not receiving his medications, he did not specify the medications to which he was referring, became loud and angry and cursed, and would not permit further examination. She also states at the time she examined plaintiff's ear, on March 16, 2005, she noted only minimal clear drainage which generally does not require medication, but she ordered the ear drops to dry up the drainage. Finally, defendant Hubbard states plaintiff did not complain to her about ear pain after the March visit and did not submit sick call requests or requests for interview on the subject of his ear or missed medication.   Defendant states plaintiff did not have a serious medical need, and her actions in treating plaintiff do not support a finding of deliberate indifference.

2) Defendant Shah - This defendant saw plaintiff on one occasion, on May 16, 2005, for

complaints of rectal bleeding.  He states in his affidavit that he ordered a non-prescription eye drop  and alcohol for plaintiff's ear, and that eye drops often are used to treat ear problems.  He further states that once a prescription is issued for an inmate, the nursing staff takes the orders from the chart, sends them to the pharmacy, creates a medication administration record (MAR), and when the prescription is received, distributes the medications accordingly.   According to plaintiff's record, he signed for the alcohol, but not the eye drops and did not submit a sick call request or request for interview concerning any missed ear medication.  Finally, defendant Shah states that the diagnosis of minimal clear external canal drainage does not constitute a serious medical need, and plaintiff would not have been harmed by missing the ear drops.

3) Defendant Burch - plaintiff's allegation against this defendant concerns the fact that on August 2, 2005 she tried to give him ear drops which stated on the box that they were "for eyes only."  Plaintiff refused the medication because of this writing, and states that when defendant Burch went to the infirmary to check about the drops, she never returned.  According to the affidavits of defendants Shah and Hubbard, eye drops are often used to treat both eye and ear infections, and defendants state Burch's actions in attempting to provide such to plaintiff were not deliberately indifferent.

4) Defendant Sandra Stratton, the Health Services Administrator of the Unit Infirmary, and a registered nurse - Defendant states in her affidavit she began working at the Unit on January 31, 2005, and is responsible for the overall administrative and professional operations of the unit infirmary.  She further states that with respect to the ear drops ordered for plaintiff in March and May, 2005, while the nursing staff took the orders off plaintiff's chart and created a MAR, there is no indication in the record that the drops were ever received from the pharmacy.  She also states that the fastest and most efficient method to resolve such matters is by submitting a sick call request or request for an interview, which

4

plaintiff did not do.  With respect to his diet, she states a copy of the script was provided to plaintiff, which he could have provided to the kitchen if there was a problem receiving his diet, and beyond providing the kitchen with such script, the infirmary can do no more to ensure that the ADC follows the order.  With respect to the missed medication, defendant acknowledges that such is not acceptable and states she implemented a corrective action plan to correct problems and prevent medication administration errors.

B.  Plaintiff's Response

In response, plaintiff states the defendants admit that he was not provided ordered medical treatment, and that the lack of treatment of his ear problem resulted in an ear infection in July and August, 2005, which required antibiotic treatment.  During the period from March, 2005-August, 2005, defendants failed to provide prescribed medications, failed to follow up with the pharmacy in filling medications, failed to chart that instructions were provided to plaintiff with respect to his medications and clinical visits, failed to provide prescribed dosages of certain medications, and failed to follow-up with medical personnel to ensure that orders were followed.  Plaintiff states such actions infer deliberate indifference, gross negligence or malevolent intent, and a genuine issue of material fact exists for a jury to determine.

C.  Standard of Review

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulaney v. Carnahan, 132 F.2d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact." Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

D.  Analysis

In order to support a claim for an Eighth Amendment violation, plaintiff must prove that defendants were deliberately indifferent to a serious medical need.  Farmer v. Brennan, 511 U.S. 825, 827 (1994).  However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  Estelle v. Gamble, 429 U.S. 197 (1976).   Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  See also Smith v. Marcantonio, 901 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).    Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996 ).  In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim.  Beyerbach v. Sears, 49 F.3d 1324,

1326 (8th Cir. 1995).  Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

1) Defendant Hubbard - Plaintiff alleges defendant's failure to ensure receipt of the ear drops and low cholesterol diet script was deliberately indifferent to his serious medical needs.  However, defendant stated in her affidavit, and plaintiff does not dispute, that she is not responsible for the distribution of medications or the preparation of meals.  Defendant also states in her affidavit that although minimal clear ear drainage normally doesn't require a prescriptive treatment, she decided in plaintiff's case that ear drops would help dry up any drainage.  This provides further evidence for why she on April 23, 2005, over a month after their March 16 encounter, would not automatically know what, if any, medications needed to be prescribed.  Although plaintiff complained about not receiving medications, he did not specify which medications he failed to receive.  This is undisputed and plaintiff's conduct in leaving the infirmary prevented Hubbard from assessing plaintiff's health and determining whether any medications should be prescribed. Furthermore, plaintiff did not submit sick call requests, requests for interview, or grievances to her about his failure to receive the medications[3], and the times he did complain to her, he became angry and hostile and left the infirmary before she could examine him to determine what his medical needs were at that time.  While the Court (and defendants) acknowledge that plaintiff's failure to receive his medications was not an acceptable result, the Court does not find that defendant Hubbard's

---

[3]
The Court notes that while plaintiff referred to specific grievance numbers in his pre-jury evidentiary hearing, held October 24, 2006, he does not provide proof of those grievances anywhere in the file, and he did not present those grievances to the Court for its review at the time of the hearing.

actions rise to the level of deliberate indifference or reckless disregard for plaintiff's health. With respect to the ear drops, plaintiff does not allege, and there is no record, that he complained of ear pain to anyone between March, 2005 and June, 2005.  Furthermore, although he was treated for an ear infection (and received antibiotics) in late June, 2005, he provides no affidavit or proof that such infection was the result of a failure to receive ear drops in March, 2005.    With respect to the low cholesterol diet argument, plaintiff offers no allegations or evidence beyond the initial complaint in April, 2005.

2) Defendant Shah - The Court finds no evidence of deliberate indifference with respect to plaintiff's single encounter with defendant Shah, at which time he was prescribed an eye drop and alcohol for ear drainage.  Plaintiff complains he did not receive the eye drops and did not receive appropriate instructions from defendant for using the alcohol pads.  However, the medical records do not evidence a complaint of ear pain or a sick call request concerning the failure to receive the eye drops. Therefore, plaintiff's allegations do not support a finding of deliberate indifference by defendant Shah.

3) Defendant Burch - This defendant's single encounter with plaintiff, at which time she attempted to provide him eye drops for his ear complaints, does not support a finding of deliberate indifference to his serious medical needs.  In addition, defendant's alleged failure to return to plaintiff after leaving to inquire about the eye drops does not support a finding of deliberate indifference.

4) Defendant Stratton - Defendant acknowledges some difficulties with the nursing staff's failure to ensure the receipt by plaintiff of certain medications, which evidently failed to be sent by the pharmacy.  In addition, defendant states that at the time, she was new to her job, and as a result of plaintiff's difficulties, she developed a corrective action plan to correct problems and prevent medication administration errors.  While the failure of plaintiff to receive his ear drops certainly constitutes negligence on someone's behalf (unknown nursing staff), defendant Stratton's actions do not support

8

a finding of deliberate indifference.

In conclusions, therefore, the Court finds that defendants' motion for summary judgment should be granted, and plaintiff's complaint against defendants should be dismissed.  Accordingly,

IT IS, THEREFORE, ORDERED that defendants' motion for summary judgment (DE #96) is hereby GRANTED, and plaintiff's complaint against defendants is hereby DISMISSED with prejudice.

IT IS FURTHER ORDERED that plaintiff's first motion to dismiss (DE #114) is DENIED as moot.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this ___22___ day of February, 2008.

_____
United States Magistrate Judge